Good morning, Your Honors. David Zucman on behalf of Mr. Olivares. Your Honors, this morning I delivered to Your Honors two cases, Griffin and Thorine. And Griffin stands for, I think, the unimpeachable proposition that there is no distinction to be drawn between a witness who claims a fatuous failure of memory versus someone who is simply unavailable. There's no difference between simply saying, I don't know, to something that they obviously know, and simply being unavailable. And I cited Thorine, which cited Griffin with approval. And that, of course, goes to Joseph Lopez's testimony. This case is outrageous. There are two witnesses that create the evidence against my client. There is David Gomez, the drunk, the liar, the person with a motive to fabricate his testimony, who puts my client into the shooter's vehicle. And I concede, the evidence as it stands shows that my client was in the shooter's vehicle. But David Gomez doesn't put a weapon in my client's hand. He does not say that he saw the shots fired. He does put him in the vehicle, but that's all. And then you have the statements of Joseph Lopez. I think we can all agree that were this case tried post-2003, these statements simply don't come in. There is insufficient evidence as a matter of law, but this wasn't post-2003. It was 2001, and the statements did come in. Joseph Lopez's testimony has got to be the worst possible combination of a person who doesn't want to testify, who's being coerced by police interrogators to give a particular statement, and still gives, at best, an equivocal statement about what he heard from John Alvarez. We have Mr. Lopez, who doesn't say that he clearly heard Mr. Alvarez say, I was the one who was shooting. He says that Mr. Alvarez speaks broken English, he can't speak it very well, and Mr. Lopez, despite his Latino surname, does not speak Spanish. So there's a language barrier. And we know that Johnny was the person, another person from that night, who was doing most of the talking. And that is the sum of the evidence. That's it. And this case is marred with egregious prosecutorial misconduct. Egregious. Now, did you make that claim? Yes. Yes, I do. Okay. It's the second uncertified issue was the jury instruction issue. And then I argued when we do the Kodiakus standards with respect to whether you should have a grave doubt about this evidence, I think that factors into that test. Now, obviously, it's not an independently exhausted claim, and, you know, I can't go back and rework the record such that I could make this claim. But it's harder to imagine more variegated prosecutorial misconduct. It begins an opening statement when the prosecutor says, you know, this is not a gang case. No one's going to call this a gang case. You shouldn't think it's a gang case just because it's a Latino male. And finally, after this litany goes on, he gets objected to. And he stops doing it. And then it just transforms into the urban realities of the case, which is, you know, the same concept smuggled in under better language. And then in closing argument, it is just awful. He tells the jury that they have a duty to convict. He says that repeatedly. He tells the jury that if they see him on the street five years from now and they do their duty, they can hold their head up high and he'll hold his head up high, the implication being that if they don't do their duty and they let this guy go, then they should hang their heads. They should be shamed. Further, he argues that the instruction, Calgic 2.11.5, this one that says that you shouldn't consider why other people are not being prosecuted, is a reason not to consider whether other people could have been the shooter. That is the only defense. That is the only issue in the case is whether Mr. Olivares is the shooter or not. That's it. And he argues 2.11.5 for that completely impermissible purpose. Every case from this Court, which is approved from this instruction, every single one has involved some sort of elemental defense where, you know, the fact that the instruction says you shouldn't consider whether other people have been or are being prosecuted or not really doesn't affect the defense. And this one ---- Mr. Zuckman, I don't mean to offend you, but I haven't ever sat on a jury, so I don't know. But are you making an argument to a court of appeals or to a jury panel? Well, you know, I really think that this case is egregious. So I'm making an argument that this jury instruction to this jury was horrible. And the way it was argued was for a completely impermissible purpose. And I think there's been a grave miscarriage of justice in this case. And I don't usually say that. And so what would be the ruling of a court of appeals in your view? If I had my way, I was writing the opinion, I did the bench brief, I would say that you should reverse this case and send it back for a retrial because of the jury instruction claim, because the prosecutor committed egregious misconduct in arguing a duty to convict and telling the jurors not to consider the fact that other people could have been the shooter. You combine that with the terrible nature of Joseph Lopez's testimony, his absolute refusal to answer questions about his statement to the police, and then the mixed bag of David Gomez's testimony, that's all there is. There is no other evidence. And then you combine that with the victim's testimony who described a shooter who was wearing different clothing than Mr. Olivares. You combine that with the fact that Mr. Olivares, they tested him for gunshot residue, didn't find him, no physical corroboration. Mr. Olivares was 19 years old at the time of this event. He is 5'5", 120 pounds. This tiny man has spent the last seven years in prison, and he's looking at spending the rest of his life in prison based on evidence that shouldn't have gotten past a preliminary hearing, much less than proof beyond a reasonable doubt. So, yeah, I mean, it is true that I am kind of arguing this as if Your Honors were jurors, and I know you're not, and I know I don't get a second crack of that apple. But it's even compounded, our reviewing problem is even compounded by the standards of AEDPA and the fact that the, I think it's the Court of Appeals, Court of Appeals previously rejected the very argument you're making in a reasoned decision. Yeah. I mean, it really lied on the reason part, because the Court of Appeals decision didn't cite any of the factors. They didn't see any of the misconduct. Maybe you should argue to the AEDPA standards. Like, for example, how they stated the law correctly, so how was it an unreasonable application of the law? The Saucerud v. Porter question of how you review sufficiency, the Jackson v. Virginia on collateral review, that question is whether the State court misapplied Jackson v. Virginia. Jackson requires the prosecution provide proof beyond a reasonable doubt. That is not a standard in question. It's a standard in question when they misweigh the evidence. This Court has held in Smith v. Crutany, which is the name of the case on the remand, the Shaking Baby case, which of course the Supreme Court is still considering whether to take or not, that it's not, when you have a case which has no physical corroboration, where there's tenuous mode of evidence and where the State just says, oh, well, you know, somebody says she did it. That's not enough. And that's what you have here. You have a very similar fact pattern in the sense that, you know, if David Gomez says, I saw him, shot him, that would be it. Joseph Lopez said, yeah, clearly I heard him say that. That would be it. But you have neither of those things and you have no other evidence that corroborates the, you know, Mr. Olivares' guilt.  Thank you, Your Honor. Thank you, counsel. Good morning, Your Honors. May it please the Court. Deputy Attorney General Sara Farhad on behalf of Respondent and appellee Sylvia Garcia. First, Your Honors, I want to address the two cases that opposing counsel presented with you today. He also handed them to me shortly before argument. I didn't get a real good chance to review them in depth. I did skim them. And I think that they're inapplicable for a couple of reasons. Well, a third of the Court hasn't read them because it just got on my desk. It's too late for me to read them. I don't know why they got there so late. Okay. But go ahead. They're direct appeal, criminal direct appeal cases. They don't implicate the ADEPA standard. Under ADEPA, this Court reviews State court holdings applying State court law. Those two cases being Federal criminal cases on direct appeal simply don't apply. They're in a completely different procedural posture. They're applying different law. And for that reason, I don't think they apply to this case. Additionally, the appellant presents them in an effort to essentially bootstrap a confrontation clause and hearsay argument onto the issue that was certified for review, which is sufficiency. Respondents admits that confrontation clause violations and hearsay issues are not before this Court. They don't matter as far as a sufficiency, as far as this Court's review under ADEPA of whether or not there was sufficient evidence in the trial court to convict. Explain how the evidence satisfies the Jackson standard. Well, the evidence at trial came from four witnesses, Your Honor. We have David Gomez and Joseph Lopez, who David Gomez, I'm sure you've read through all of the briefing. He sees he basically switched places with the Petitioner. His testimony puts the Petitioner not only in the back seat, but behind the driver. And the reason it does that is because there's no testimony, there's no evidence the Petitioner ever moved from that seat. What we have is Gomez putting him in that seat. Nobody ever gets into that back seat aside from Petitioner, and there's no testimony that he's moved around in the back seat. Secondly, you have the testimony from the two victims in the car. Daisy, who's the front seat passenger, looks out her window and sees the driver of the green car. Now, if you're imagining the four-door victim's car next to the four-door shooter's car, if the driver is next to Daisy, that means the back seats are lined up. So you have Daisy's testimony placing the two cars essentially parallel to each other. You also have Daisy's testimony saying that she saw sparks coming from Salvador's window. Now, Salvador was sitting right behind her. So from that, it's reasonable to infer that the shots were coming through the back passenger window. The other victim in the car, Julio, was sitting behind the driver in the back seat. His testimony placed the green car right next to the victim's car on the right side, on the left. And his testimony also established that the shots came from the back seat of the shooter's car. Furthermore, Salvador, who was sitting behind Daisy, was shot, the testimony was, 15 times. It's clear that the majority of those shots came through that back window. And if the driver of the shooter's car is lined up with Daisy, then it's reasonable to infer that the shots came from the back seat of the shooter's car. And that's the testimony of the two victims. You also have Joseph Lopez's testimony the next day about the conversation that he overheard Petitioner and Johnny and Ricky, who, by the way, were also in the shooter's car. There's testimony establishing that those two people were also in the shooter's car. Ricky was apparently driving. Johnny was the front seat passenger. So those two people are also party to that conversation. And they're discussing what had happened and Lopez's overhearing. And the testimony is that the Petitioner said he was in the back seat, that he blasted the other car, and that he later disposed of the gun. Now, for purposes of this Court's review under the ADPA, this Court independently reviews the record for a determination of whether or not there was sufficient evidence, whether or not there was a confrontation issue, a hearsay issue, it doesn't matter. The record is what it is for purposes of this Court's review. The evidence is what it is for purposes of this Court's review. And that's the evidence in the case. And from that evidence, a reasonable juror could have concluded beyond a reasonable doubt that the Petitioner was in the shooter's seat and that he fired the weapon. And that's the factual evidence below. Another – a couple of other points I just wanted to highlight. The Sarasad case, I believe, is an opposite to this case for a couple of reasons. First, Sarasad, again, was a direct appeal case. I'm sorry. It wasn't a direct appeal case. Sarasad reviewed the court of appeals' opinion where the court of appeal actually was presented with a sufficiency issue. The court of appeal in our case, on direct review, the only one where there's a full reasoned opinion, sufficiency wasn't an issue. So it's unfair to assume that the court of appeal would have set forth a statement of facts utterly complete with every reasonable inference that could be made when sufficiency wasn't an issue and the only claims that were raised were sentencing errors and jury instructional errors. So for that reason, Sarasad and the Petitioner's reliance on Sarasad is inappropriate. The last point that I wanted to make was – or is that Petitioner is essentially asking this Court to completely disregard the decisions of 12 people in the trial court to usurp their duties, to sit in those places, and to reweigh the evidence de novo. And under the applicable standard of review under the ADPA and under the clearly well-settled and undisputed law governing sufficiency, it's inappropriate for this Court to do that. The district court saw through those arguments and I am confident that this Court will, too. Thank you. Did the government consider his claim of actual innocence? And I know what our review standard is and I don't think anybody suspects that we're not going to apply it correctly, but you don't want the wrong person serving time. Did you take a look at it? I'm sorry, I didn't. Not you personally, but did those who brought this action take a look at the fact that he's claiming actual innocence? Well, he's not claiming. I don't know how you can claim actual innocence. He's claiming that he's not the shooter. I agree. He's not claiming actual innocence because – You can't. He can't. Neither one of them can claim actual innocence. Right. You're in the car. Yes, yes. You're there. And he was a participant, I gather, from this record in that he had something to do with who sat where in the car. The petitioner did? Yes. Well, insofar as he asked Gomez to get out and got into Gomez's seat, he had control over where he was sitting. You know, I'm not – I reviewed the entire record. I can't speak for the prosecutor as to whether or not they considered that issue. I mean, obviously it was the defense in the case, so I'm assuming that the prosecutor was completely aware of that. But I think that the other evidence, not only from Lopez and Gomez, but also the reasonable inferences that can be made from the victim's testimony, established that there was, beyond a reasonable doubt, evidence that the petitioner was in the shooter's seat. So I can't – as far as what was in the prosecutor's mind, I can't say to that. But I think that there was sufficient evidence, Your Honor, to support the conviction. Thank you. I'm sorry. One last thing. Opposing counsel made some points regarding this uncertified issue. Since I haven't been given an opportunity to brief that issue, it wasn't properly certified for review. Should this Court decide to consider those arguments, I would request an opportunity to brief those arguments in writing. Thank you. Thank you, counsel. Mr. Zegman. Your Honors, please, please give her that opportunity. This really is a horribly flawed case. I got on this case – You know, you said it, and I've heard you say it two or three times, but this case has gone through the – has taken – gone through every step. You had every opportunity to prove whatever you needed to prove, didn't you? And the record comes to us, and you know – you have to see the problem that you've got. I got on this case after the Court issued – certified one issue for review, and I begged that you would consider this second jury instruction claim. And the Respondent didn't brief it, even though it was in my opening brief. So I wish I would have gotten involved in this case much, much earlier than I did. It would not have turned out this way, I'm very confident, had I been involved. Well, if you had gotten involved in it early enough, it wouldn't – the situation wouldn't have arisen, because this is about a silly – as silly a situation as anybody has ever seen when it comes to a killing. No question about that, Your Honor. It's just – I just urge – go back and look at David Gomez's testimony, and go look at Joseph Lopez's testimony. It's brief. I'm not asking you to read 2,000 pages. I'm asking you to read 50. I mean, there really isn't that much there. You know, the prosecutor – the Respondent talks about the victim's testimony. The victims were asked, do you recognize this guy? Is this the guy that shot you? And each of them said, I don't know who that guy is. And you can understand that. That's an understandable answer. The cars were parallel. Right. Well, and they also described – but they did describe the shooter. And the shooter had a different color shirt than what Mr. Oliveros was wearing that night. And Mr. Gomez was wearing the same color shirt as the shooter. And Mr. Gomez had the motive because it was his younger brother that got – and forgive me for quoting the record exactly – his ass totally kicked by Julio and Salvador, who are apparently very hardy individuals. Shot 15 times. Got out of the car. Helped his wife. I mean, it's a horrible thing that happened. But it ain't nearly as horrible as what happened in that trial court. Please, please, please, make them brief it. Thank you, Your Honors. Thank you, counsel. Oliveros v. Garcia will be submitted.
judges: Farris, Wardlaw, Schwarzer